OPINION OF THE COURT
H. Patrick Leis, III, J.
This decision will deal with two issues. The first concerns *969 whether or not misstatements made by the plaintiff in his net worth affidavit filed with the court and relied on by the court in awarding defendant pendente lite support and maintenance constitute deceit warranting this court in holding plaintiff in contempt pursuant to section 753 (A) (2) of the Judiciary Law. The second issue deals with defendant’s application for counsel fees.
The parties married in November 1968 in South Korea and lived there for one and one-half years before moving to the United States. Mrs. Kim dated Dr. Kim for eight years before they married. Dr. Kim is the only man Mrs. Kim has ever dated.
Mrs. Kim did not work outside the home during the marriage. Her primary responsibility was caring for the parties’ three children, Jennifer, born in 1969, Neil, born in 1970, and David, born in 1973. Although Mrs. Kim has lived in the United States since June of 1970 and has a college degree from Seoul University (in Korea), she is not fluent in English. Plaintiff is a medical doctor and pathologist. He is fluent in the English language. During the course of the marriage plaintiff worked two jobs, at times, to provide for the family needs and educational expenses of the children.
In this matrimonial action Dr. Kim submitted to the court a net worth statement sworn to August 30, 1994. In that document plaintiff failed to disclose that during a 12-month period immediately preceding the date it was sworn to, he had paid approximately $5,000 per month to an alleged paramour, Michele Kim, totalling approximately $60,000. Plaintiff also failed to mention that he had given his relatives $11,943.
Plaintiff asserted in his affidavit in opposition to defendant’s pendente lite application, that his expenses (education and others) precluded him from giving defendant the amount of money that she requested in her pendente lite application.
During the contempt trial plaintiff testified that although he never expected Michele Kim to pay back any of the monies that he gave her, he nevertheless had her execute promissory notes reflecting her obligation to repay. Plaintiff, however, failed to include these promissory notes as accounts receivable or list them on his net worth statement.
Plaintiff testified that beginning in August 1993 he paid Michele Kim (his alleged paramour) the following amounts by check: $5,000 in early August 1993; $5,000 on August 31, 1993; *970 $3,000 on September 3, 1993; $4,000 on September 10, 1993; $8,000 on September 17, 1993; $6,000 on September 24, 1993; $3,000 on October 1, 1993; $3,000 on October 8, 1993; $3,000 on October 15, 1993; $3,000 on October 29, 1993; $3,000 on November 30,1993; $2,000 on January 15,1994; $2,000 on February 4, 1994; $3,000 on February 26, 1994; $1,500 on April 1, 1994; $700 on April 12, 1994; $700 on May 6, 1994; $1,000 on May 9, 1994; $2,360 on June 8, 1994; $600 on June 25, 1994; $900 on July 11, 1994; $1,597 on July 16, 1994; $700 on August 6,1994; $700 on September 2,1994; and $1,000 on November 8, 1994, for a total of $64,757.
It must be noted that although the net worth statement was sworn to by plaintiff in August 1994, it is dated June 30, 1994. Between June 30, 1994 and August 30, 1994 plaintiff gave Michele Kim $900 on July 11, 1994; $1,597 on July 16, 1994 and $700 on August 6, 1994. None of these amounts are reflected on plaintiff’s net worth statement either.
Plaintiff’s failure to disclose in his net worth statement monthly payments being made to his alleged paramour becomes even more significant when one considers that plaintiff claimed in his net worth statement an $18,308 negative cash flow for the year (income of $354,436, expenses of $372,724). Plaintiff also listed on his net worth statement a $4,000 monthly loan payment that was inaccurate. In the 12 months prior to the date that plaintiff swore to his net worth statement, he was actually paying $1,000 a month on loans and not $4,000 a month as set forth in his net worth statement. Although the pendente lite decision, of which plaintiff had notice, precluded both parties from further encumbering marital assets, plaintiff continued, after its issuance, to write checks on the home equity loan account thereby further encumbering the marital home.
Justice Berler issued a pendente lite decision subsequent to the submission of plaintiff’s net worth statement ordering plaintiff to pay $100 a week in temporary maintenance to defendant, and make monthly payments for the following: the first mortgage of $2,507, the second mortgage of $1,000, $205 for fuel oil, $106 for LILCO, $280 for telephone and cable, $40 for water, $451 for life insurance, $103 for property insurance, $150 for gardening and other maintenance, and $200 for auto insurance. After a conference with counsel, Justice Berler raised the maintenance to $250 a week. The increase in maintenance was not related to plaintiff’s misstatements contained in his net worth affidavit. Plaintiff’s total monthly obligation, with temporary maintenance of $250 a week, was $6,117.
*971 The fact that defendant may have exaggerated expenses on her net worth statement, which counsel asserts is the reason for Judge Berler’s original award of $100 in maintenance, does not absolve plaintiff from responsibility for admitted false statements and omissions contained in his own net worth statement.
This court finds that plaintiff’s failure to disclose substantial sums of money paid to his relatives and alleged paramour constitutes a deceit on this court.
This court also finds that the plaintiff intentionally deceived this court by listing on his net worth statement loan payments of $4,000 a month when in fact he admitted, during cross-examination, that he was actually paying $1,000 a month. In addition, plaintiff stated in his net worth statement that he was paying $8,000 per month (or $96,000 per year) for education for his children. However, on cross-examination plaintiff admitted that the figure for education expenses was actually $63,000 for the year.
Clearly plaintiff’s misstatements were material to Judge Berler’s determination of the pendente lite maintenance application. The court relied on plaintiff’s financial figures in setting the pendente lite maintenance award of $100 a week, which was later increased to $250.
This court has the power to punish by contempt a litigant’s fraudulent and deceitful statements contained in sworn court documents such as a net worth statement. (See, 317 W. 87 Assocs. v Dannenberg, 159 AD2d 245 [1st Dept 1990]; Judiciary Law § 753 [A] [2].) Such conduct can also be the subject of criminal prosecution. (See, People v Russo, 124 Misc 2d 438 [Suffolk County Ct 1984].)
The court hereby adjudicates plaintiff to be in contempt pursuant to Judiciary Law § 753 (A) (2) for his deceit in: (1) failing to disclose in his net worth statement payments that he was making to his alleged paramour Michele Kim; (2) failing to disclose in his net worth statement monies given to his relatives; (3) claiming loan payments of $4,000 a month while actually paying $1,000 a month; and (4) claiming educational expenses of $96,000 a year while actually paying $63,000 a year.
Defendant asks this court to review the pendente lite decision and adjust it retroactively and prospectively under CPLR 5015 (a) in light of the information now available. In addition defendant requests counsel fees.
Based on the information now available, pursuant to CPLR 5015 (a), the court upwardly modifies Justice Berler’s *972 pendente lite award from $250 a week to $400 a week retroactive to the date of the July 1994 application. Plaintiff is directed to pay $400 a week to defendant commencing November 30,1996 and a lump-sum retroactive award of $18,060 ($150 a week for 28 months) to be paid within 60 days of the date of this decision.
In coming to a decision on spousal maintenance the court has considered the following factors pursuant to Domestic Relations Law § 236 (B) (6): (1) plaintiff is a medical doctor who has earned over $350,000 a year; (2) defendant has not worked during the 28 years the parties have been married; (3) defendant has limited use of the English language and no apparent job skills; (4) defendant’s future earning capacity is extremely limited whereas plaintiff’s appears excellent; (5) the parties are each 52 years old and in good health; (6) defendant has little likelihood of becoming self-supporting; (7) defendant has contributed as a homemaker during the marriage, cooking, cleaning and caring for the parties’ three children; (8) plaintiff has transferred approximately $72,000 (of marital assets) to his alleged paramour and relatives.
The fact that this court has denied plaintiff a divorce on grounds does not preclude the award of maintenance and support. (See, Domestic Relations Law § 236 [B] [8] [b]; King v King, 230 AD2d 775.)
In addition, as his sentence for contempt, plaintiff is directed to pay a fine of $10,000 to be deposited with the County Treasurer within 90 days of the date of this decision. Courts must rely on the accuracy of the allegations made by parties when under oath. When it is established that a litigant has made false allegations in papers submitted to the court (which the court relies on to the detriment of another party to the proceeding) that deceit must be dealt with firmly. Here, plaintiff would also be sentenced to a period of incarceration if he had not disclosed his true expenditures in interrogatories and EBTs (prior to trial).
The court now turns to the defendant’s application for counsel fees. This court has personally observed Mr. Sternick’s ability as trial counsel and has reviewed his background and experience. His services are certainly worth $175 per hour. The court has carefully reviewed Mr. Sternick’s list of services provided (attached as exhibit A to his posttrial affirmation in support of his application for counsel fees, dated June 14,1996). Even if this court were to exclude the items complained of in *973 Mr. Stein’s affidavit such as conferences with defendant, alleged excessive hours spent in drafting legal documents, hours spent in legal research, alleged excessive hours in trial preparation and conversations and telephone calls to co-counsel Randy Dusack, there would still remain 214 hours of unrefutable billing. At $175 per hour Mr. Sternick would be entitled to $37,450. The court concludes based on the hours invested and the quality of work that has been provided to defendant, that Mr. Sternick be awarded the sum of $37,450 for counsel fees. Plaintiff is directed to pay to Mr. Sternick the sum of $37,450 in monthly installments of $4,000, the first installment being due 30 days after the date of this decision until such sum has been paid in full. If Mr. Sternick wishes to forward $5,000 of this money to Mr. Dusack he may do so at his option. This court has not been provided with an affidavit setting forth the work provided by Mr. Dusack and therefore is unable to award an independent fee to him.